UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
SARKISSIAN MASON, INC., a Michigan corporation, and AUTOMATIC, LLC, a Delaware Limited Liability Company,

        Plaintiffs,

        v.

ENTERPRISE HOLDINGS, INC., a Missouri corporation,

        Defendant.
------------------------------------------------------------------x

Case No. 11 CV 9472 (LGS)

# DEFENDANT ENTERPRISE HOLDINGS, INC.'S
# REPLY MEMORANDUM IN SUPPORT OF MOTION FOR
# SUMMARY ADJUDICATION OF ISSUES AND SUMMARY JUDGMENT

| | |
|---|---|
| Daniel D. Edelman | Douglas W. Sullivan (pro hac vice) |
| dedelman@crowell.com | dsullivan@crowell.com |
| CROWELL & MORING LLP | M. Kay Martin (pro hac vice) |
| 590 Madison Ave, 20th Floor | mmartin@crowell.com |
| New York, New York 10022 | Joel D. Smith (pro hac vice) |
| Telephone: (212) 223-4000 | jsmith@crowell.com |
| Facsimile: (212) 223-4134 | CROWELL & MORING LLP |
| | 275 Battery Street, 23rd Floor |
| | San Francisco, CA 94111 |
| | Telephone: (415) 986-2800 |
| | Facsimile: (415) 986-2827 |
| *Attorneys for Defendant* | *Attorneys for Defendant* |
| *Enterprise Holdings, Inc.* | *Enterprise Holdings, Inc.* |

SFACTIVE-903000498.1

## TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ........................................................................ 1

II. ARGUMENT ..................................................................................................... 2

    A. Claim No. 1 (Breach of Nondisclosure Agreement) .................................. 2

        1. The Undisputed Facts Demonstrate That The ABS Concept Does Not Include Anything Confidential ...................................... 2

        2. The Undisputed Facts Establish That EHI Has Not Used Any Alleged Confidential Information Of Plaintiffs ..................... 4

            a. Mazda, Toyota And VW Cars With QR Codes ................. 4

            b. OnRamp .......................................................................... 4

            c. Plaintiffs Cannot Rely On Their Marketing Expert To Defeat Summary Judgment ......................................... 5

        3. The Undisputed Facts Establish That Plaintiffs Waived Any Confidentiality ........................................................................ 6

    B. Claim No. 2 (Promissory Estoppel/Equitable Estoppel) ............................ 7

    C. Claim No. 3 (Unjust Enrichment/Quantum Meruit) ................................. 7

    D. Claim No. 4 (Misrepresentation And/Or Silent Fraud) ............................ 8

    E. Claim No. 5 (Misappropriation Of Trade Secrets) ................................... 9

    F. All Claims (Lack Of Damages And Unjust Enrichment) ........................ 10

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Brandwynne v. Combe Int'l, Ltd*,
 74 F. Supp. 2d 364 (S.D.N.Y. 1999) ............................................................................................. 9

*Bristol Village, Inc. v. Louisiana-Pac. Corp.*,
 2013 WL 55698 (W.D.N.Y. Jan. 3, 2013) ..................................................................................... 8

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
 509 U.S. 209 (1993) ....................................................................................................................... 5

*Diamond Power Int'l, Inc. v. Davidson*,
 540 F. Supp. 2d 1322 (N.D. Ga. 2007) ......................................................................................... 9

*Foam Supplies, Inc. v. The Dow Chem. Co.*,
 2006 WL 2225392 (E.D.Mo. Aug. 2, 2006) ................................................................................. 8

*O'Neill v. JC Penney Life Ins. Co.,*
 No. 97 Civ. 7467(CPS), 1998 WL 661513 (E.D.N.Y. Aug. 6, 1998) ...................................... 10

*Reprosystem, B.V. v. SCM Corp.*,
 727 F.2d 257 (2d Cir. 1984) .......................................................................................................... 7

**I.     PRELIMINARY STATEMENT**

Plaintiffs' opposition is more interesting for what it does <u>not</u> do, than what it does. Plaintiffs do <u>not</u> dispute those facts that warrant granting of the motion. Plaintiffs do <u>not</u> focus on whether plaintiffs' PowerPoint presentations contain items that are actually confidential and whether EHI has misappropriated confidential items. Instead, plaintiffs focus on extraneous matters in an attempt to portray EHI unfavorably and in an attempt to create factual disputes over matters that are irrelevant to the motion.

Plaintiffs devote less than two pages (including nearly a page of pictures of the Enterprise business) to describing the alleged confidential aspects of the AutoMatic Buying Service ("ABS") concept. (Opp'n, pp. 2-3.) It is readily apparent based on the undisputed facts about the ABS concept, however, that Plaintiffs did not propose anything confidential and that EHI has not used any alleged confidential information of plaintiffs. (See Sections A.1-2 below.)

The PowerPoint presentation on "ABS" itself (Ex. 25, EHI 88-94, 105-9) makes clear that plaintiffs were proposing to develop an Automatic website at a cost of $1.25 million to advertise cars, in the hope that the car manufacturers would pay Automatic for sales leads stemming from visiting the Automatic website. (Stmt., ¶¶ 41-42.) The proposed website could be accessed by scanning QR codes in the rental cars, which codes were prevalent by 2011. (Stmt., ¶35.) It is undisputed, however, that plaintiffs were unable to get car manufacturers to agree to use the Automatic website or to pay for sales leads. (Stmt., ¶¶ 57-58 .) Therefore, the Automatic website, which was the key to the proposed contract with EHI, was never built. (Stmt., ¶59.)

The undisputed facts also establish that Mr. Privitelli, Managing Director of Plaintiff Automatic, disclosed the ABS concept to others without confidentiality agreements, thereby waiving any alleged confidentiality. (Stmt., ¶¶ 50, 52.) (The self-serving testimony of Mr. Sarkissian, that he only disclosed the ABS concept to a "close friend" with the

1

understanding that he would maintain the secrecy, ignores the public disclosures made by Mr. Privitelli.)

For many years prior to speaking with plaintiffs, EHI had been advertising cars on behalf of car manufacturers in an attempt to promote car sales. (Stmt., ¶¶ 29-32.) The use of QR codes to link to the car manufacturers' own websites was simply a logical extension of its advertising methods. (Stmt., ¶¶ 33, 35-8.) Plaintiffs' attempts to prevent EHI from using QR codes to assist car manufacturers in advertising cars must be rejected.

Rather than focusing on what in the ABS concept was allegedly confidential or what EHI allegedly took that was confidential, plaintiffs devote much of the opposition to trying to cast EHI in a bad light. Throughout the opposition, plaintiffs cite self-serving and misleading testimony of Mr. Sarkissian in an attempt to have this Court believe that EHI did not treat plaintiffs fairly, and instead tricked plaintiffs into believing that EHI would do business with plaintiffs. Although not material to this motion, the fact is that EHI was prepared to do business with Automatic _if_ Automatic was willing to spend the $1.25 million to develop its website (which did not happen), _and if_ Automatic located a car manufacturer that preferred Automatic's proposed website over its own (which did not happen). (Stmt., ¶¶ 17-18.) This evidence, however, does not give rise to a cognizable claim against EHI; rather, it simply shows that Enterprise was willing to entertain proposals, which ultimately did not materialize.

## II.   ARGUMENT

### A.   Claim No. 1 (Breach of Nondisclosure Agreement).

#### 1.   The Undisputed Facts Demonstrate That The ABS Concept Does Not Include Anything Confidential.

Plaintiffs describe their allegedly confidential ABS concept in three sentences:

> [A] buying service using "mobile engagement" technology to connect renters and vehicle manufacturers (called "OEMs") for the purpose of generating new car sales for OEMs. SM proposed placing computer codes (Quick Response Codes or "QR Codes") in EHI's vehicles that renters could scan using their smartphones. The scans would lead renters to engaging content specifically designed [i.e., the Automatic website] to persuade them to purchase the same model as the cars they were driving. Opp'n at 2-3.

The following undisputed facts establish that the ABS concept is not "confidential":

2

- Using QR codes for smartphone applications (*i.e.*, mobile engagement) is not confidential information of plaintiffs or anyone else. (Stmt., ¶¶ 32, 35.)
- Before the "ABS concept" was proposed, QR codes were used by car manufacturers. (Stmt., ¶ 36.)
- Placing QR codes in cars is not plaintiffs' confidential information. (Stmt., ¶ 37.)
- There is nothing novel about placing a QR code in a rental car. (Stmt., ¶ 38.)
- As Mr. Sarkissian himself admitted, using a QR code to go to a manufacturer's own website is not plaintiffs' confidential information. (Stmt., ¶ 39.) (This statement is a direct admission of Mr. Sarkissian, and plaintiffs' denial of it is not supported by any conflicting evidence.)
- EHI companies simply use QR codes in rental cars to link to the car manufacturers' own websites. (Stmt., ¶¶ 46a., 47a., 48a., 49b.)
- No car manufacturer ever offered to pay AutoMatic for any sales leads or advised AutoMatic that they would want to use an AutoMatic website to promote their cars. (Stmt., ¶ 58.)
- Plaintiffs never built their proposed AutoMatic website (i.e., the proposed "specifically designed content" of ABS). (Stmt., ¶¶ 59 and 65.)
- Following the unrelated "test drive" program for Chrysler, AutoMatic has never been able to get anyone to do any business with AutoMatic. (Stmt., ¶ 70.)

In addition, the undisputed fact is that EHI had the idea to put QR codes on key tags of rental cars before plaintiffs, as reflected in a January 2011 Presentation to Chrysler. (Stmt., ¶¶ 33-34.)[1]  While not necessary for granting this motion given the other undisputed facts, this fact further supports granting summary judgment, and plaintiffs cannot refute it.  In this regard, plaintiffs argue that the January 2011 presentation is irrelevant because the presentation uses the term "bar code" instead of "QR code." (Opp'n, p. 13; Count. Stmt., pp.22-3.)  Plaintiffs are wrong.  First, it is undisputed that the January 2011 Presentation shows an actual QR code on a key tag, and the text specifically mentions "Smartphone applications." (Stmt., ¶33.)  Second, the terms "bar codes" and "QR codes" were sometimes used interchangeably to refer to QR codes, as Mr. Sarkissian has admitted.  Sarkissian Depo., 186:22-24 (Def.'s Ex. 30).  Third, John

---

[1] Plaintiffs claim that Mr. Morrell never told them that Mr. Howell had already thought of placing QR codes on rental car key tags.  Whether he did or not is irrelevant.  Moreover, there would be no reason to mention that fact because plaintiffs admit that by 2011, QR codes were prevalent and that there is nothing "novel" about placing a QR code in a rental car.  Counter-Stmt., ¶¶ 35-38.  As plaintiffs make clear in their opposition brief, the alleged value offered by plaintiffs was their proposed website, which they never built.  *Id.* at ¶¶, 41-43, 59; *see also* Opp'n 3, 6 (plaintiffs offered to create a website with "custom" and "engaging" content, that car manufacturers would find "desirable.")

3

Howell (who was EHI's head of Marketing) has testified that he came up with the idea to place QR codes on key tags, including for this presentation, and his testimony was not refuted or even addressed. (Howell Dec., ¶¶ 17-21, 47; Stmt., ¶ 33.) Fourth, putting a QR code in a rental car was not a confidence of anyone, but rather a logical extension of the use of QR codes.[2] (Stmt., ¶ 38.)

### 2. The Undisputed Facts Establish That EHI Has Not Used Any Alleged Confidential Information Of Plaintiffs.

#### a. Mazda, Toyota And VW Cars With QR Codes.

Plaintiffs purport to dispute the conclusions that EHI did not use their confidential information in connection with the Mazda, Toyota and VW cars at issue, but they do not dispute the underlying facts set forth in EHI's separate statement, or offer conflicting evidence:

- The QR Codes in the Mazda, Toyota and VW cars link to the car manufacturers own websites or videos. Counter-Stmt., ¶¶ 46a, 47a, 48a.
- The marketing activities employed with respect to each of the cars at issue do not include confidential information of plaintiffs. Counter-Stmt., ¶¶ 46b, 47b, 48b. (To avoid admitting these facts, plaintiffs simply claim no "independent knowledge," but that does not raise a factual dispute.)
- None of Plaintiffs' PowerPoint presentations proposed using a car manufacturers' website, and, Mr. Sarkissian admitted that using a QR code for that purpose was not plaintiffs' confidential information. Counter-Stmt., ¶¶ 39, 43.

Plaintiffs cite responses to paragraphs 29-39 in their counter-statement as evidence purportedly supporting their denial that no confidential information was used in connection with the Mazda, Toyota or VW cars, but those responses do not rebut the undisputed facts. Each of the paragraphs are either admitted in plaintiffs' counterstatement, or involve admissions by plaintiffs' expert or by Mr. Sarkissian that are unrebutted by any evidence.[3]

---

[2] Plaintiffs assert that "Mr. Morrell confessed a complete lack of knowledge regarding computer codes at the time of the [January 2011 Chrysler] presentation, including whether bar codes or QR codes can lead to external websites." Opp'n, 13. In the cited testimony, however, Mr. Morrell was asked whether he was familiar with a software application called "Stickybits," to which he answered "no." He was not asked and did not testify as to what he knew about QR codes in January 2011. Morrell Depo., 33:7-36:5 (Plaintiffs' Ex. 4). In any event, Mr. Morrell's knowledge of QR codes is irrelevant, because plaintiffs ignore unrebutted evidence that John Howell, EHI's Vice President of Marketing, independently thought of using QR codes in rental cars beginning in 2010.

[3] Plaintiffs admit to paragraph 29, which is an unrebutted admission by plaintiffs' expert regarding EHI's prior marketing practices. Plaintiffs do not deny paragraphs 30-31, which concerns EHI's August 2010 presentation to Chrysler, and merely state (incorrectly) that there was no date on the presentation. *See* Def.'s Ex. 15. Plaintiffs do

(continued…)

4

### b.     OnRamp.

With respect to the OnRamp program, plaintiffs admit the underlying facts in paragraphs 49a-49g, including the following:

- OnRamp contains links to a participating car manufacturers' own website or video.  Counter-Stmt., ¶ 49b.
- Using a QR code to provide information unrelated to the rental car itself is not plaintiffs' confidential information.  Counter-Stmt., ¶ 49g.
- Plaintiffs' PowerPoint presentations describing ABS did not propose using a QR code for purposes of linking to pre-existing websites of Enterprise car rentals or for used rental cars offered for sale by Enterprise, or to provide information about nearby gas stations or places of local interest.  Counter-Stmt., ¶ 49e and f.[4]

Plaintiffs contend that evidence cited in paragraphs 29-39 in their counter-statement raises factual disputes.  However, as with the Mazda, Toyota and VW cars at issue, those responses raise no material issues of fact.

### c.     Plaintiffs Cannot Rely On Their Marketing Expert To Defeat Summary Judgment.

First, despite the inadmissible legal conclusion of plaintiffs' marketing expert, Mr. von Zelowitz, that EHI used plaintiffs' confidential information, he does not deny the underlying and supporting facts, many of which are based on his admissions.  *See, e.g.*, Counter-Stmt., ¶¶ 29, 34, 38, 43, 46b.

Second, Mr. von Zelowitz's definition of "confidentiality" is contrary to the parties' Nondisclosure Agreement ("NDA") and the law.  *Brooke Group Ltd. v. Brown & Williamson*

---

(continued…)

not deny paragraphs 32-33, which address EHI's January 2011 presentation to Chrysler.  In paragraph 34, plaintiffs' marketing expert admitted that EHI thought of using QR codes before plaintiffs did; plaintiffs state that they "admit in part" paragraph 34 but none of the cited evidence conflicts with their expert's admission.  Plaintiffs admit paragraphs 35-38, including the fact that placing QR codes in cars is not "novel."  Finally, paragraph 39 is an admission by Mr. Sarkissian that using a QR code to go to a car manufacturer's own website is not plaintiffs' confidential information, and none of the evidence that plaintiffs cite in response to paragraph 39 rebut that admission.

[4] In their Counter-Statement, plaintiffs contend as a "further response" that Mr. Sarkissian orally proposed to Mr. Morrell the possibility of using ABS to provide information about nearby gas stations.  Counter-Stmt., ¶ 49e.  That fact, even if true, cannot defeat EHI's motion because plaintiffs also admit that using a QR code to provide information unrelated to the rental car itself is not their confidential information.  *Id.*, ¶ 49g.  Moreover, for a rental car company, to use a QR code to provide a link to a third-party website for gas stations is an obvious, non-confidential use of QR Codes.  (Stmt., ¶ 38.)

5

*Tobacco Corp.*, 509 U.S. 209, 242 (1993) ("when indisputable record facts contradict or otherwise render [expert] opinion unreasonable, it cannot support a jury's verdict."). The NDA excludes from the definition of "confidential information" any information that was in the public domain or in EHI's possession prior to disclosure. Counter-Stmt., ¶ 23. Yet Mr. von Zelowitz' opinion is that it does not matter if EHI <u>previously</u> had the allegedly "confidential" marketing ideas; instead, EHI's prior marketing ideas somehow became plaintiffs' "confidential" ideas. For example, he testified that at least nine pages of a marketing presentation that EHI made to Chrysler in August 2010 (before the parties even met), contained plaintiffs' allegedly confidential information because plaintiffs purportedly proposed the same activities much later, in 2011. (von Zelowitz Depo., Ex. 32, 149:23-161:7) Indeed, he went so far as to opine that EHI can no longer <u>use signs, counter mats or key tags</u> or <u>conduct post-rental surveys</u> because plaintiffs purportedly proposed using these items with ABS, despite admitting that EHI used those items "long before" EHI ever spoke with plaintiffs. (*Id.* at 150:7-14, 153:19-154:8.) Nor can EHI, according to von Zelowitz, agree with manufacturers to place specific vehicles in the "insurance replacement" locations, despite having done so for years. (*Id.* at 151:7-19.)[5]

### 3. The Undisputed Facts Establish That Plaintiffs Waived Any Confidentiality.

Automatic's Managing Director Mr. Privitelli publicly disclosed ABS:

> Q: Well, you described that overall process [of ABS] and how it would work to representatives of Mazda, Ford and Hyundai, right?
> A: Correct.
> Q: Without a confidentiality agreement; right?
> A: Correct.

Privitelli Depo., 124:4-17 (Def.'s Ex. 31); *see also* 100:4-101:21; 103:13-105:17 (testifying that he personally disclosed ABS to Mazda and Hyundai representatives without a confidentiality

---

[5] Plaintiffs wrongly accuse EHI of failing to produce the 2007 Polk Study related to the insurance replacement business, and of withholding documents regarding the alleged financial benefits of OnRamp. Opp'n, 23; Counter-Stmt., ¶¶ 9, 26, 28. EHI produced the Polk Study on June 6, 2012 under Bates Nos. ENT00017393-467. As for documents concerning the alleged financial benefits of OnRamp, none were produced because none exist.

6

agreement). Privitelli further testified that he did not want EHI to keep ABS secret and that he expected EHI to describe ABS to car manufacturers. *Id.* 161:18-20 ("Q: you didn't want [EHI] to keep it secret, did you?  A:  No, no."); *see also* Counter-Stmt., ¶ 52.[6]

### B.   Claim No. 2 (Promissory Estoppel/Equitable Estoppel).

Citing no case, plaintiffs argue that EHI's motion must be denied because EHI failed to "negotiate in good faith" and "cannot establish as a matter of law" that it rejected the draft Agreement.[7] Opp'n, 21. That argument fails for two reasons. **First**, plaintiffs admit that the draft Agreement was contingent on final execution (Counter-Stmt., ¶ ¶ 11, 14), and as a matter of law, "plaintiffs cannot succeed on the theory that . . . defendants breached a 'duty to negotiate in good faith'" where that is the case. *Reprosystem, B.V. v. SCM Corp.*, 727 F.2d 257, 264 (2d Cir. 1984). **Second**, plaintiffs cannot rebut that EHI rejected the draft Agreement because plaintiffs: (1) admit that they "understood that EHI never signed the agreement" and had "problems" with the agreement; (2) admit that EHI provided a non-binding letter of intent instead of edits to the draft Agreement; and (3) do not rebut Susan Lombardo's testimony that EHI told plaintiffs that it "rejected the terms of the draft Agreement." Opp'n, 20; Counter-Stmt., ¶¶ 15, 17; Lombardo Decl., ¶ 38 (Def.'s Ex. 2.)

### C.   Claim No. 3 (Unjust Enrichment/Quantum Meruit).

Plaintiffs contend that even though their unjust enrichment/quantum meruit claim is preempted by MUTSA and barred by the parties' NDA, it may survive as an "alternative" claim

---

[6] Also unavailing is plaintiffs' reliance on testimony from Mr. Sarkissian in which he claimed that the copyright and "Patent Pending" marks on the PowerPoint presentations were the equivalent of a "confidentiality" stamp. Opp'n, 15 n.6. Copyright obviously has nothing to do with confidentiality, and Sarkissian testified that the "Patent Pending" referred to an earlier, unrelated test drive program, not ABS. Sarkissian Depo., 239:20-241:8.

[7] Plaintiffs state that "even Mr. Morrell believed that the [draft Agreement] was never rejected by EHI." Opp'n, 21. In and immediately prior to the cited testimony, however, Mr. Morrell testified that the draft Agreement was "dead" and that EHI did not "support the draft of the strategic agreement," but that EHI had told plaintiffs it would be willing work with them if they found a car manufacturer interested in ABS. Morrell Depo., 243:17-25; 253:23-254:15 (Plf.'s Ex. 4.) In a similar vein, in their brief, plaintiffs quote from a November 7, 2011 email from Mr. Morrell, which they contend shows that he promised them that EHI would soon execute an agreement with them. Opp'n, 8. However, Morrell's email referred to EHI's non-binding letter of intent, which plaintiffs admit that they received one week later, on November 15, 2011. Counter-Stmt, ¶ 17.

in the event that the trade secret or breach of contract claims fail.  Opp'n, 20.  However, unjust enrichment claims are preempted by MUTSA regardless of whether a plaintiff can prevail on its trade secret claim.  *See Foam Supplies, Inc. v. The Dow Chem. Co.*, 2006 WL 2225392 *15 (E.D.Mo. Aug. 2, 2006)  Also, unjust enrichment may be pursued as an alternative to a contract claim only where there is a dispute over existence of the contract; it is not a "fallback" claim available if the plaintiff fails to prove a breach of contract (i.e., the NDA).  *See Bristol Village, Inc. v. Louisiana-Pac. Corp.*, 2013 WL 55698 *7 (W.D.N.Y. Jan. 3, 2013).

>  D. Claim No. 4 (**Misrepresentation And/Or Silent Fraud**).

The misrepresentation claim is premised on the contentions that EHI (a) falsely promised that it would honor the NDA, and that it would negotiate in good faith and sign an agreement with plaintiffs to implement ABS (Complaint, ¶ 66), and (b) failed to disclose that EHI was negotiating with car manufacturers to advertise their cars using QR codes (*Id*. ¶ 67).  **First**, as a matter of law, the alleged promises cannot support a misrepresentation claim, and plaintiffs cite no authority to the contrary.  *See* Opening Brf., Sec. IV.  In addition, it is undisputed that plaintiffs knew that there would be no contract until there was a signed agreement, that EHI raised "problems" with plaintiffs' proposal, and that EHI rejected the draft Agreement.  Counter-Stmt., ¶¶ 11-15; Lombardo Decl., ¶ 38 (Def.'s Ex. 2.)[8]  **Second**, with regard to the alleged concealment, EHI had no disclosure obligation, and plaintiffs cite no authority to the contrary.  Opp'n, 20.  In any event, it is undisputed that EHI told plaintiffs that it wanted to remain free to deal with car manufacturers without plaintiffs' involvement, and plaintiffs expected that EHI would speak with other car manufacturers.[9]  Counter-Stmt., ¶¶ 16, 52.

---

[8] In an attempt to create a triable issue, on page 19 of their brief, plaintiffs quote from the "expert" report of Mr. von Zelowitz in which he claims, without evidence, that EHI "negotiated in bad faith and misled" plaintiffs.  That is not admissible expert testimony of an "advertising expert," and the report is inadmissible hearsay.

[9] Plaintiffs argue that EHI purportedly made misrepresentations "designed to prevent [Plaintiffs] from marketing [ABS] to EHI's competitors," but cite no evidence of any such misrepresentations.  Opp'n, 19.  In fact, Mr. Sarkissian admitted that he instructed Mr. Privitelli to contact the Hertz car rental company as "backup" in the event that no deal was reached with EHI.  Sarkissian Depo., 289:3-6; 290:16-291:17 (Def.'s Ex. 30).  Similarly, plaintiffs wrongly suggest that it was deceptive for EHI to engage with plaintiffs while developing the OnRamp program.  There was nothing deceptive as EHI had no way to know if any car manufacturer would be interested in

(continued…)

8

### E.   Claim No. 5 (Misappropriation Of Trade Secrets).

Plaintiffs' arguments in support of their trade secret claim fail as a matter of law.[10]  **First**, the undisputed facts establish that ABS is not confidential, let alone a trade secret.  Further, plaintiffs cannot rely on their marketing expert's legal conclusion that ABS was a trade secret, because it is not an admissible opinion and he does not know what a trade secret is.  von Zelowitz Depo., 192:4-193:21 ("I have to admit not to being an expert on trade secrets or understanding all the legal ramifications thereof".)  Nor can plaintiffs avoid summary judgment by pointing to EHI's press release, describing the OnRamp program as "industry-leading" given that EHI was the first rental car company to place QR codes in cars.  *See Brandwynne v. Combe Int'l, Ltd*, 74 F. Supp. 2d 364, 377 (S.D.N.Y. 1999) (as a matter of law, defendant's press release describing a product as "unique" and new did not support trade secret claim).  **Second**, the only "substantial measures" that plaintiffs contend that they took to protect the alleged confidentiality of ABS is the NDA, a prior agreement signed in connection with an unrelated test drive program.  Counter-Stmt., ¶ 22, 25.  "Generalized confidentiality agreements [are] generally not . . . sufficient to demonstrate reasonable efforts" to maintain the secrecy of an alleged trade secret.  *Diamond Power Int'l, Inc. v. Davidson*, 540 F. Supp. 2d 1322, 1334 (N.D. Ga. 2007).  And, as shown in Section A above, it is also undisputed that Mr. Privitelli publicly disclosed ABS.  **Third**, ABS has no economic value.  Indeed, plaintiffs <u>admit every material fact in the separate statement concerning this issue</u>, including the fact that no car manufacturer ever agreed to pay for sales leads.[11]  Counter-Stmt., ¶¶ 57-59.  Automatic's Managing Director testified that the

---

(continued…)

plaintiffs' proposed website, and if an interested manufacturer did surface, EHI could have included a link to the website from the OnRamp landing page.

[10] Dismissal of plaintiffs' common law trade secret claim is also required on preemption grounds because plaintiffs concede that their trade secret claim is governed by MUTSA.  Opp'n, 17.  Plaintiffs attempt to evade dismissal by pretending that their common law claim is really one under MUTSA, but their complaint shows that it is not.  Complaint, ¶¶ 72-82.

[11] As to paragraph 58, plaintiffs state that they "admit in part and deny in part" that no car manufacturer ever agreed to pay for sales leads, but cite irrelevant evidence that does not rebut their admission.

<u>only</u> way that plaintiffs would get paid under their proposal is if car manufacturers were willing to pay such fees, and they were not. (Privitelli Depo., Ex. 31, 82:18-25.)

### F. All Claims (Lack Of Damages And Unjust Enrichment).

In an attempt to create a triable issue over damages/unjust enrichment, Mr. Kohn purports to calculate "potential" damages/unjust enrichment based on potential leads that car manufacturers might potentially pay to EHI, if EHI demanded fees any time a rental customer visited the car manufacturer's <u>own website</u>. Opp'n, 23; *see also* Kohn Depo., 132:8-133:20 (attached as Ex. 35 to Wojnar-Raycraft Decl.) His calculations suffer from three fatal flaws. **First**, there is no evidence that any car manufacturer would pay anything to EHI, as a result of a QR code directing customers to their own websites. Counter-Stmt., ¶¶ 58, 75, 76. **Second**, Mr. Kohn had no opinion about what aspects of ABS are confidential, and made no assumptions about what confidential information was misappropriated. Counter-Stmt., ¶¶ 71b, 71c. As such, his damages calculations draw no nexus between the purported damages and what confidential information, if any, EHI allegedly took. **Third**, Mr. Kohn had no opinion on the probability that any manufacturer would pay for leads (Ex. 33, 82:14-16), while plaintiffs' marketing expert testified that it was speculative whether any leads would be generated, and hence, any payments for leads would ensue. von Zelowitz Depo., 266:4-20 (Def.'s Ex. 32).[12] Plaintiffs cannot evade summary judgment by relying on speculative expert opinion that defies the undisputed evidence. *See O'Neill v. JC Penney Life Ins. Co.,* No. 97 Civ. 7467(CPS), 1998 WL 661513, at *6 (E.D.N.Y. Aug. 6, 1998) ("Possibility and speculation . . . do not suffice on a motion for summary judgment, even if voiced by an expert.").

Dated: April 1, 2013                                   **CROWELL & MORING LLP**

                                                        By:   /s/ Joel D. Smith

---

[12] As to OnRamp, plaintiffs seize on testimony of EHI's expert witness, Mr. Regan, stating that OnRamp hopefully provides intangible benefits by enhancing the customer experience and helping to maintain relationships with car manufacturers. It is obvious that EHI hopes that OnRamp is beneficial to its business, just like EHI hopes that it is beneficial to provide other services to its customers, such as free bottled water. Mere speculation that OnRamp provides some intangible benefit, however, does not translate as damages.